| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | No. 15 CV 9779 |
| | ) | (12 CR 658) |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| DAVID TRESCH, | ) | |
| | ) | |
| Defendant-Movant. | ) | |

## ORDER

David Tresch filed a *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.[1] He alleges that his defense counsel provided ineffective assistance of counsel, and that the government engaged in misconduct that forced him to plead guilty. For the reasons that follow, Tresch's motion is denied and no certificate of appealability will issue.

## I. Background

Between 2004 and 2012, Tresch worked for the Mayer Brown law firm in Chicago, Illinois. *See* Plea Agreement at 3, 12, No. 1:12-CR-00658 (Apr. 22, 2013), ECF No. 69 (hereinafter "Plea Agreement").[2] Tresch started as an operations manager in the information technology (IT) department and eventually became the firm's Chief Information Officer. *Id.* at 3, 11. Throughout his tenure at the law firm, Tresch participated in a kickback scheme in which he steered business to an outside

---

[1]This Court has subject matter jurisdiction over the case under 28 U.S.C. § 2255.

[2]Citations to the record filings in this § 2255 case are "R." followed by the docket number and, when necessary, a page or paragraph number. When the criminal docket is cited, filings are referred to with the criminal case number and "ECF No." for the docket entry number.

IT company, netting over $4 million dollars to the company in profits and to Tresch in kickbacks. *Id.* at 2-12.

Here's how the scheme worked: On Tresch's recommendation, Mayer Brown contracted with NS Mater, an IT firm, in Fall 2004. Plea Agreement at 3-4. Around this time, Tresch entered into a corrupt agreement with Nicholas Demars, the president of NS Mater: in exchange for a kickback for the Mayer Brown work that NS Mater performed, Tresch agreed to continue steering Mayer Brown's IT work to NS Mater. *Id.* at 4-8. This kickback scheme continued for six years, until Mayer Brown stopped using NS Mater's services in late 2010. *Id.* at 9. At this point, Tresch and Demars tweaked their scheme: in exchange for a kickback, Tresch helped Demars submit false invoices to Mayer Brown for work that NS Mater never performed. *Id.* at 9-12. After discovering the scheme in June 2012, the firm fired Tresch. *Id.* at 12.

In August 2012, the government filed a criminal complaint against Tresch. Compl., No. 1:12-CR-00658 (Aug. 29, 2012), ECF No. 1 (hereinafter "Compl."). Initially, Tresch was appointed a lawyer, 08/30/12 Minute Entry, No. 1:12-CR-00658 (Aug. 30, 2012), ECF No. 6, and waived his right to a preliminary examination, 09/05/12 Minute Entry, No. 1:12-CR-00658 (Sept. 5, 2012), ECF No. 11. By the end of October, Tresch retained Jeff Steinback as his lawyer. 11/02/12 Minute Entry, No. 1:12-CR-00658 (Nov. 2, 2012), ECF No. 23. After a series of proffer sessions with the government, Tresch appeared before a grand jury. To meet the requirements under the Speedy Trial Act, the government filed, and was granted,

five unopposed motions for an extension of time to seek an indictment between September 2012 and January 2013. No. 1:12-CR-00658, ECF Nos. 13, 18, 19, 22, 24, 27, 28, 31, 32, 35.

In January 2013, the grand jury returned an indictment charging Tresch with ten counts of mail fraud. Indictment, No. 1:12-CR-00658 (Jan. 10, 2013), ECF No. 37. Tresch pled guilty four months later to one count of mail fraud under 18 U.S.C. §§ 1341, 1346. Plea Agreement at 2. At the change-of-plea colloquy, Tresch confirmed that he was satisfied with his attorney, Mr. Steinback, Rule 11 Colloquy Tr. at 7:25-8:4, No. 1:12-CR-00658 (July 29, 2013), ECF No. 142 (hereinafter "Rule 11 Colloquy Tr."); that he read and understood the terms of the plea agreement, *id.* at 10:1-6; that his plea was voluntary, *id.* at 10:16-21; that he would pay restitution and forfeit assets according to the terms of the plea agreement, *id.* at 11:20-12:5; and that the plea agreement summarized the factual basis for his guilty plea, *id.* at 24:20-24. Tresch also agreed to waive his appellate and collateral rights as part of the plea deal. Plea Agreement at 25-26.

After a series of delays brought about by both Tresch and his counsel, the Court sentenced Tresch on October 28, 2014. 10/28/14 Minute Entry, No. 1:12-CR-00658 (Oct. 28, 2014), ECF No. 143. At the sentencing hearing, Tresch reaffirmed that Mr. Steinback had provided adequate representation throughout the entire criminal proceeding. Sentencing Hr'g Tr. at 3:7-10, No. 1:12-CR-00658 (Dec. 2, 2014), ECF No. 151 (hereinafter "Sentencing Hr'g Tr."). Tresch also admitted that he committed the crimes. *Id.* at 53:11-55:25.

A lot of the sentencing hearing revolved around whether Tresch was entitled to a three-level reduction for acceptance of responsibility. Although Tresch had cooperated with the government and acknowledged his guilt, he also wrote an e-book just before his sentencing; despite the fact that he engaged in a long-running kickback scheme, the book suggested that Mayer Brown fired him for whistleblowing. Sentencing Hr'g Tr. at 16:13-22:12. The Court ultimately granted Tresch the three-level reduction, which yielded a guideline sentencing range of 57 to 71 months of imprisonment. *Id.* at 24:21-23. After hearing § 3553 arguments from both the government and attorney Steinback, as well as a personal statement from Tresch himself, the Court sentenced Tresch to 27 months' imprisonment, imposed a restitution amount of $1,112,000 payable to Mayer Brown, and entered the parties' agreed-to forfeiture order. *Id.* at 61:13-63:3.

Tresch now moves for the Court to vacate his sentence. R. 13, Am. § 2255 Mot. He asserts two main claims in support of his petition: (1) ineffective assistance of counsel based on his attorney's failure to investigate the kickback scheme; failure to adequately communicate; waiver of Tresch's speedy trial rights; failure to request a special prosecutor; failure to advise on the consequences of entering a guilty plea; failure to object to the government's asset forfeiture calculations; and failure to present an adequate defense at sentencing; and (2) government misconduct.[3] Am. § 2255 Mot.; *see also* R. 24, Tresch's Reply Br.; R. 34, Tresh's Sur-Reply Br. The

---

[3]Tresch also maintains that two other errors—(1) violation of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, and (2) unlawful forfeiture—warrant vacating his sentence. Am. § 2255 Mot. at 17-25. Because these alleged errors are part and parcel of Tresch's ineffective assistance claim, the Court addresses them when discussing that claim. *See infra* Sections III.A.3 & III.A.6.

government has asked this Court to deny Tresch's motion. R. 17, Government's Resp. Br.; *see also* R. 36, Government's Sur-Reply Br.

## II. Standard of Review

### A. 28 U.S.C. § 2255

Under 28 U.S.C. § 2255, a prisoner in custody pursuant to a federal court sentencing may move the sentencing court to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack … ." 28 U.S.C. § 2255. In other words, to obtain relief under § 2255, Tresch must show that the error asserted is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997).

Section 2255, however, "is not a substitute for a direct appeal." *Barnickel*, 113 F.3d at 706; *see also Qualls v. United States*, 774 F.2d 850, 851 (7th Cir. 1985) (citing *United States v. Addonizio*, 442 U.S. 178, 184 (1979)). Consequently, "[i]f any issue could have been raised on direct appeal, the failure to take such appeal precludes review pursuant to a § 2255 motion unless the petitioner can show 'cause' for the procedural default and 'actual prejudice' resulting from the errors of which the petitioner complains." *Qualls*, 774 F.2d at 851 (quoting *United States v. Frady*, 456 U.S. 152, 167 (1982)); *see also Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir. 1988). The "cause and prejudice" escape hatch, however, only applies to

constitutional claims, not non-constitutional claims. *Bontkowski*, 850 F.2d at 313. In contrast, ineffective-assistance claims are not procedurally defaulted at all for failure to raise them on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 503 (2003) ("[T]here is no procedural default for failure to raise an ineffective-assistance claim on direct appeal.").

## B. Ineffective Assistance of Counsel

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. To receive habeas relief on the merits of his ineffective-assistance-of-counsel claim, Tresch must meet the familiar two-element, performance-and-prejudice standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, he must show that his counsel's performance was deficient and that prejudice resulted. *Id.* at 687. On performance, the question is whether "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. On prejudice, the question is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of guilty pleas, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process"; that is, "but for counsel's errors, [Tresch] would not have [pled] guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Tresch must show *both* unreasonable performance and resulting prejudice to win habeas relief. *Strickland*, 466 U.S. at 687.

Judicial review of counsel's performance "must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. The Court must presume that "the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted).

### III. Analysis

### A. Ineffective Assistance of Counsel

Tresch alleges that his counsel made seven mistakes: (1) failure to investigate the kickback scheme; (2) failure to adequately communicate; (3) waiver of Tresch's speedy trial rights; (4) failure to request a special prosecutor; (5) failure to advise Tresch of the restitution consequences of his guilty plea; (6) failure to object to the government's asset forfeiture calculations; and (7) failure to communicate. Am. § 2255 Mot.; Tresch's Reply Br.

Before analyzing each alleged error, it is worth highlighting the in-court statements Tresch made about his lawyer at the Rule 11 colloquy. This is because "a defendant is normally bound by the representations he makes to a court during the colloquy." *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010). Put another way, "'[a] district court is generally justified in … holding the defendant to [his] admissions at the Rule 11 hearing.'" *United States v. Pike*, 211 F.3d 385, 389-90 (7th Cir. 2000) (quoting *United States v. Groll*, 992 F.3d 755, 758 (7th Cir. 1993)); *see also United States v. Stewart*, 198 F.3d 984, 986 (7th Cir. 1999) ("The

fundamental problem with this position is that Stewart has already had one opportunity to state, under oath and in the presence of the district judge, whether his attorney gave such defective advice. That opportunity was the plea hearing, and Stewart swore that no such advice had been given.").

At the change-of-plea colloquy, Tresch said that he had fully discussed the charges with attorney Steinback and that he was satisfied with his representation:

> The Court:     And have you fully discussed these charges with your counsel?
>
> [Tresch]:      Yes, I have, your Honor.
>
> The Court:     And are you satisfied with your counsel's efforts in regard to representing you in the case generally and then also specifically in negotiating the plea agreement with the government?
>
> [Tresch]:      Yes, your Honor.[4]

Rule 11 Colloquy Tr. at 7:22-8:4. Although these statements do not foreclose Tresch's ineffective-assistance claim, they do place a heavy burden on Tresch to

---

[4]Tresch once again confirmed that he thought Steinback's representation was adequate at the sentencing hearing:

> The Court: Then did you receive a copy of what was entitled the Supplemental Presentence Report?
>
> [Tresch]: Yes, your Honor.
>
> The Court: And have you had a chance to discuss it with your attorney, Mr. Steinback?
>
> [Tresch]: Yes, I have, your Honor.
>
> The Court: Are you satisfied with Mr. Steinback's efforts in representing you throughout the case and also with respect to preparing for sentencing?
>
> [Tresch]: Yes, your Honor.

Sentencing Hr'g Tr. at 3:1-10.

prove either element of the ineffective assistance test.[5] With that background in place, the Court addresses each ineffective assistance argument in turn.

## 1. Failure to Investigate

Tresch's first argument in support of his ineffective-assistance claim is that his counsel did not adequately investigate his defense. Am. § 2255 Mot. at 9-12, 15-16. He even goes so far as to claim that his attorney "failed to investigate any of the lines of inquiry which would support [Tresch's] claims of innocence and efforts at mitigation." *Id.* at 10. Tresch offers two arguments here: first, he asserts that Mr. Steinback should have interviewed two Mayer Brown employees who were responsible for hiring him and retaining NS Mater. *Id.* Those employees, Tresch contends, had "asked [him] if NS Mater had the … capabilities to address … tech problems [at Mayer Brown]," and "were aware of [his] relationship with NS Mater." R. 7 at Appendix C, Tresch Decl. ¶¶ 7, 8. Second, Tresch asserts that he and Mr. Steinback should have reviewed the government's evidence together. Am. § 2255 Mot. at 10.

Of course, in order to be effective, a defense lawyer must learn and reasonably investigate the case. "Adequate pretrial preparation, including the

---

[5]In his Reply Brief, Tresch asserts that governmental coercion prevented him from complaining about his attorney at the Rule 11 colloquy and at the sentencing hearing. Tresch's Reply Br. at 3 ("The government's response notes that [Tresch] said, at sentencing, he was satisfied with attorney Steinback's performance. This was said because [Tresch] had nothing to compare Steinback's performance to, and because the necks of [Tresch's] cherished children were resting firmly in the guillotine of the government's threat to illegally prosecute them, the threatening agent ever present and watching, the silence-complicit prosecutor setting the tone and reinforcing the threat."). Because Tresch has failed to establish that his guilty plea was involuntary, *see infra* Section III.B.2., this attempt to explain away his in-court statements must be rejected.

examination of documents, is essential to properly represent a criminal defendant." *United States v. Berkowitz*, 927 F.2d 1376, 1382 (7th Cir. 1991). Pretrial preparation also encompasses "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Courts look at the totality of the circumstances when determining whether a lawyer's decision not to investigate was reasonable. *Id.* This means that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements and actions." *Id.* Even where a defendant establishes inadequate investigation, "the defendant must make 'a comprehensive showing of what the investigation would have produced,'" *United States v. Balzano*, 916 F.2d 1273, 1296 (7th Cir. 1990) (citations omitted), as well as establish that "the information that might have been discovered 'would have led counsel to change his recommendation as to the plea.'" *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) (quoting *Hill v. Lockhart*, 474 U.S. at 59).

Tresch has not shown that Steinback's failure (if it can be called a "failure") to interview the Mayer Brown employees or review discovery with Tresch amounted to ineffective assistance. As the government points out, "[t]he record fails to reflect that Tresch ever maintained his innocence or that he had the slightest interest in proceeding to trial and contesting the criminal charges." Government's Resp. Br. at 16. Indeed, Tresch began cooperating with the government even *before* retaining Steinback, *see* 09/05/12 Minute Entry, No. 1:12-CR-00658 (Sept. 5, 2012), ECF No. 11, and continued to do so all the way through sentencing. This continuous

cooperation, coupled with Tresch's repeated acceptance of guilt, gave Steinback "reason to believe that pursuing [exculpatory] investigations would be fruitless or even harmful." *Strickland*, 466 U.S. at 691. Tresch admitted early on that he committed the crime, so defense counsel could reasonably conclude that interviewing the two former Mayer Brown employees would have done nothing more than confirm that Tresch had committed the fraud. Under these circumstances, it was reasonable for Steinback to decide not to pursue these investigative avenues and instead decide to continue supporting Tresch's decision to pursue a cooperation deal. *Cf. United States v. Godwin*, 202 F.3d 969, 973 (7th Cir. 2000) (observing that "[i]t was reasonable, in the face of the evidence against Godwin … , for [his counsel] to decide to cooperate with the government from the get-go").

What's more, Tresch does not point to any exculpatory or mitigating evidence that "the [two] lines of inquiry" would have uncovered, Am. § 2255 Mot. at 10. That failure dooms the ineffective-assistance claim. Tresch neither submitted affidavits from either Mayer Brown employee setting out the exculpatory testimony of those witnesses, nor explained even one exculpatory detail that might have shown up in discovery. The statements in Tresch's declaration that the former Mayer Brown employees had "asked [him] if NS Mater had the … capabilities to address … tech problems," and "were aware of [his] relationship with NS Mater," Tresch Decl. ¶¶ 7, 8, fall short of undermining Tresch's admissions of guilt, because neither statement comes close to suggesting that those employees were actually aware of the *kickback*

scheme. Without any reason to think that those "lines of inquiry" would have yielded favorable evidence, Tresch cannot show that his lawyer's performance was objectively unreasonable or that he suffered any prejudice. *See Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (rejecting the defendant's ineffective assistance claim for failure to investigate because the defendant did not establish with "sufficiently precise information" what the investigation would have produced); *Balzano*, 916 F.2d at 1296 (rejecting an ineffective assistance claim based on an inadequate investigation allegation where "[the defendant] was unable to specifically demonstrate any exculpatory evidence on the involved tapes"); *Serfling v. United States*, 958 F. Supp. 389, 392 (N.D. Ill. 1997) (reasoning that "Serfling cannot prevail in his ineffective assistance of counsel claim simply by submitting a list speculating about the testimony of possible witnesses"). So Tresch's ineffective-assistance claim for failure to investigate does not justify relief.[6]

## 2. Failure to Communicate

Tresch also claims that Mr. Steinback's failure to communicate with him constitutes ineffective assistance of counsel. Am. § 2255 Mot. at 9-12, 16. To support this claim, Tresch submits a phone call log, *see* R. 7 at Appendix A, and email records, *see* R. 7 at Appendix B.

The Seventh Circuit has held that there is no "minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide

---

[6]Had Tresch sought discovery in his § 2255 motion, *see* Rules Governing Section 2255 Proceedings, Rule 6(a), the Court would have likewise denied this request. District courts have discretion to grant requests for discovery in a § 2255 motion based on a showing of good cause. *Id.* Here, Tresch has given the Court no reason to authorize discovery on either the Mayer Brown employees or the government's evidence in the underlying case.

effective assistance of counsel … ." *United States ex rel. Kleba v. McGinnis*, 796 F.2d 947, 954 (7th Cir. 1986). Even where a lawyer's communication with a client is spotty, courts will only find ineffective assistance if the quality of the attorney-client interactions was also subpar. *See, e.g.*, *United States v. Walsh*, 2016 WL 561908, at *7 (N.D. Ill. Feb. 12, 2016) ("There is nothing in the record to suggest that the three times his attorney met with him constituted ineffectiveness nor did he assert that at his change of plea hearing."); *House v. United States*, 2011 WL 1429159, at *6 (N.D. Ill. Apr. 14, 2011) ("House alleges that Steingold inadequately communicated with him … [b]ut House does not explain why the five minute conversation was insufficient … .").

To be sure, Steinback could have communicated better with Tresch, *see* R. 7 at Appendix B, but this Court cannot find that Steinback's interactions with Tresch fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. To start, nowhere does Tresch contend that the communications he did have with Steinback were not productive and informative. And although Steinback did postpone court hearings and even sent someone else in his place sometimes, Tresch does not suggest that his lawyer failed "to consult with [him] on *important decisions* and to keep [him] informed of *important developments* in the course of the prosecution." *Id.* at 688 (emphases added). What's more, Tresch confirmed at the change-of-plea colloquy that he had discussed the charges and the sentencing guidelines with his lawyer. Rule 11 Colloquy Tr. at 7:14-24, 12:17-13:4. With regard to sentencing, Tresch expressed how impressed he was with the sentencing

memorandum that Steinback drafted. R. 7 at Appendix B, 09/09/14 Email from Tresch to Steinback ("Received with many thanks. I already previewed it and will read it again tonight. Please let Jeff know I said 'Wow.'"). The record also reflects that Steinback vigorously argued on Tresch's behalf at the sentencing hearing in all respects, including on the primary dispute between the parties, namely, the acceptance-of-responsibility reduction.[7] *See* Sentencing Hr'g Tr. at 10:6-21:20, 36:10-52:16. Indeed, Steinback won that battle. In short, Tresch has failed to show that Steinback fell short on consulting with Tresch on important decisions. To the contrary, Steinback came through for Tresch when it came to important developments in the case.

Even if Tresch had shown that Mr. Steinback did not consult with him enough, that failure to communicate did not prejudice the outcome of the proceeding. Tresch has provided no evidence—and the record does not reflect—that his defense was adversely affected by Steinback's alleged failure to more fully discuss the case with him. *See McGinnis*, 796 F.2d at 954 ("Kleba has provided no evidence nor has our review of the record uncovered any evidence that Kleba's defense was adversely affected by Brody's failure to meet more frequently with Kleba prior to trial."). Indeed, due to Steinback's skill in arguing sentencing

---

[7]Steinback is a very experienced criminal defense lawyer, and well known for his skill in arguing sentencing positions for his clients, which is almost surely the reason why Tresch retained him and kept him as counsel even as Steinback struggled with some physical medical issues. Although Steinback's experience by no means gives him some sort of ineffective-assistance immunity, it does give the Court confidence that Steinback knew what he had to do to get Tresch the best possible outcome. *Cf. McGinnis*, 796 F.2d at 954 ("We are confident that an attorney as experienced as Brody and referred to by the trial court as 'a very capable criminal lawyer' can get more out of one interview with a client than a neophyte lawyer could get out of a similar meeting.").

positions, Tresch received a relatively lenient sentence. This ineffective-assistance claim is denied too.

### 3. Speedy Trial Rights Violations

Next, Tresch alleges ineffectiveness based on Steinback's decision to waive Tresch's speedy trial rights and Steinback's alleged refusal to move to dismiss the indictment under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*[8] Am. § 2255 Mot. at 9-15. Under the Speedy Trial Act, "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested," 18 U.S.C. § 3161(b), although extensions are permitted on certain grounds. Between September 2012 and January 2013, the government filed five unopposed motions for an extension of time to seek an indictment, which the Chief Judge granted. No. 1:12-CR-00658, ECF Nos. 13, 18, 19, 22, 24, 27, 28, 31, 32, 35.

Even assuming that there somehow was a Speedy Trial Act violation, Steinback was not ineffective for allegedly refusing to move to dismiss the indictment. As soon as the government filed the criminal complaint, Tresch expressed his willingness to cooperate and plead guilty. *See* 09/05/12 Minute Entry, No. 1:12-CR-00658 (Sept. 5, 2012), ECF No. 11 (noting Tresch's decision to waive a preliminary hearing). Extending the 30-day window to obtain the indictment in order to hold additional proffer sessions therefore only *benefitted* Tresch. So Tresch cannot show that his attorney pursued an unsound pleading strategy by acquiescing

---

[8]In his Reply Brief, Tresch clarifies that he is "challenging his case based on the requirements of the Speedy Trial Act, statutory requirements." Tresch's Reply Br. at 7.

to the government's motions to extend the time for filing the indictment.[9] *See Strickland*, 466 U.S. at 689.

Neither can Tresch show that he suffered any prejudice as a result of his attorney's decision not to move to dismiss the indictment. Even if his attorney had succeeded in dismissing the indictment, there is no reason to think that the dismissal would have been with prejudice. *See* 18 U.S.C. § 3162(a)(1) ("In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."). Indeed, a number of courts have rejected ineffective-assistance claims based on a failure to dismiss the indictment for this reason. *See, e.g.*, *Khatib v. United States*, 2015 WL 7432361, at *7 (E.D. Wis. Nov. 23, 2015) ("[T]o the extent either attorney actually thought there were grounds to dismiss under the Speedy Trial Act, they might have reasonably decided to forgo such a motion based on the very strong likelihood that any dismissal would have been without prejudice."); *United States v. Cook*, 48 F. Supp. 2d 776, 777 (N.D. Ill. 1999) ("Mr. Cook offers nothing to indicate his indictment would have been dismissed with prejudice, especially given the factors to be considered in making that determination, 18

---

[9]In light of Tresch's cooperation strategy, even if Steinback never apprised Tresch of his speedy trial rights, that failure would not amount to deficient performance. The Seventh Circuit has even held that "[an attorney's] failure to discuss the purely procedural tactic of requesting a time extension [under the Speedy Trial Act] does not implicate the Sixth Amendment." *United States v. Nesbitt*, 852 F.2d 1502, 1515 n.12 (7th Cir. 1988), *abrogated on other grounds by United States v. Durrive*, 902 F.2d 1221 (7th Cir. 1990).

U.S.C. § 3162(a)(1).”). Absent any reason to think that the result of the proceedings would have been different—here, that the indictment would have been dismissed with prejudice—Tresch's ineffective-assistance claim on this ground fails.

To the extent that Tresch asserts a Speedy Trial Act violation unattached from any alleged ineffective assistance he received, that claim fails too. In order to adequately allege a Speedy Trial Act violation under § 2255, a petitioner must show that the violation “constituted ‘a fundamental defect which inherently results in a complete miscarriage of justice.’” *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)); *Cook*, 48 F. Supp. 2d at 777-78 (“The Speedy Trial Act violation alleged here is cognizable in a Section 2255 proceeding only if it constitutes a fundamental defect in the trial resulting in a complete miscarriage of justice.”); *United States v. Bailey*, 1995 WL 302441, at *8 (N.D. Ill. May 16, 1995) (“A claim of legal error, as opposed to constitutional or jurisdictional error, is not cognizable in section 2255 proceedings unless the error constitutes a fundamental defect in the trial resulting in a complete miscarriage of justice.”), *aff'd*, 106 F.3d 404 (7th Cir. 1997). Remember that the Speedy Trial Act requires the government to obtain an indictment within 30 days after the defendant is arrested. 18 U.S.C. § 3161(b). A district court, however, has discretion to extend the time within which the indictment must be obtained “on the basis … that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.” *Id.* § 3161(h)(7)(A); *see also United States v. White*, 443 F.3d 582, 588 (7th Cir. 2006) (“The decision to grant a continuance, and

the accompanying decision to exclude the delay under the Act, is addressed to the sound discretion of the district court."). When determining whether to grant a continuance, courts consider:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

> (ii) Whether the case is so unusual or so complex … that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself … .

> (iii) Whether … delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.

> (iv) Whether the failure to grant such a continuance … would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the [Government] the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B).

As discussed earlier, the Chief Judge granted each of the government's five motions to extend the time to obtain an indictment. No. 1:12-CR-00658, ECF Nos. 18, 22, 27, 31, 35. Each time, the Court found that the ends of justice warranted the extension under § 3161(h)(7)(B). The extensions recognized that "this is a complex case" and more time was needed to give the government "the reasonable time necessary for effective preparation of the evidence for presentation to the Grand Jury." Order, No. 1:12-CR-00658 (Oct. 22, 2012), ECF No. 22. This "preparation" included holding proffer sessions with Tresch, who had expressed his willingness to cooperate from the get-go. Based on these findings, Tresch has failed to establish

that the continuances "constituted 'fundamental defect[s] which … result[ed] in a complete miscarriage of justice.'"[10] *Addonizio*, 442 U.S. at 185 (quoting *Hill v. United States*, 368 U.S. at 428).

In any event, by pleading guilty Tresch waived his right to challenge his conviction based on alleged Speedy Trial Act violations. *See Young v. United States*, 124 F.3d 794, 798 (7th Cir. 1997) ("A guilty plea waives every issue except a claim that the court lacks power to adjudicate."); *see also United States v. Broce,* 488 U.S. 563, 575-76 (1989); *Cook*, 48 F. Supp. 2d at 778. This is because, after a defendant enters a guilty plea, "only the knowing and voluntary nature of the plea may be attacked." *United States v. Brown*, 870 F.2d 1354, 1358 (7th Cir. 1989) (citing *McMann v. Richardson*, 397 U.S. 759 (1970)). What's more, that Tresch relinquished his right to collaterally attack his sentence—aside from "a claim of involuntariness, or ineffective assistance of counsel"—further confirms that Tresch has waived any claim under the Speedy Trial Act. Plea Agreement at 25-26. On top

___

[10]In support of his Speedy Trial Act claim, Tresch filed a Sur-Reply Brief asking the Court "to take judicial notice of the phrase 'not-overwhelming volume of discovery'" contained in a minute entry docketed in the underlying criminal case. *See* 02/20/13 Minute Entry, No. 1:12-CR-00658 (Feb. 20, 2013), ECF No. 56; *see also* Tresh's Sur-Reply Br. After the government obtained the indictment, the Court excluded time under the Speedy Trial Act so that the parties could finalize the plea agreement. *See* 02/20/13 Minute Entry, No. 1:12-CR-00658 (Feb. 20, 2013), ECF No. 56. The Court noted, however, that "[i]n light of the charges and *not-overwhelming volume of discovery*, the Court does expect that the change of plea occur on [03/25/13]." *Id.* (emphasis added). According to Tresch, that phrase negates any claim that extending the time for the government to obtain the indictment was appropriate. Not so. As the government points out, Tresch ignores that the government cited a number of factors supporting its request to extend the time to obtain the indictment. *See* Government's Sur-Reply Br. at 3. The Court also notes that the volume of discovery does not always correlate with the complexity of a case, which was one of the reasons why the Speedy Trial Act extensions were granted in the first place. *See* Order, No. 1:12-CR-00658 (Oct. 22, 2012), ECF No. 22. What's more, the Court's reference to the "not-overwhelming volume of discovery" was made *after* the government obtained the indictment.

of that plea-agreement waiver is another waiver, this time statutory: "[t]he [Speedy Trial] Act expressly provides that defendants waive their rights under the Act when they do not move to dismiss the indictment." *Blake v. United States*, 723 F.3d 870, 885 (7th Cir. 2013); *see also* 18 U.S.C. § 3162(a)(2) ("Failure of the defendant to move for dismissal prior to trial … shall constitute a waiver of the right to dismissal under this section."). Whether raised via ineffective assistance or brought under the Act itself, Tresch's § 2255 motion based on his speedy trial rights must be denied.

### 4. Failure to Request a Special Prosecutor

Tresch claims that Steinback was ineffective because he did not request that a special prosecutor assume responsibility for the case. Am. § 2255 Mot. at 9. According to Tresch, the government should have appointed a special prosecutor "because of the incestuous nature of the relationship between Mayer Brown and the United States Attorney's Office in Chicago." *Id.*

This claim is frivolous. To start, "[i]t is not deficient performance to fail to raise an argument with no real chance of success … ." *Williams v. Carter*, 85 F. Supp. 2d 837, 840 (N.D. Ill. 1999); *cf. United States v. Snyder*, 872 F.2d 1351, 1358 (7th Cir. 1989). And here, demanding that the government appoint a special prosecutor would have been futile. Typically, the Attorney General alone has the power to appoint a special prosecutor where the prosecution "would present a conflict of interest for the [Department of Justice] or other extraordinary circumstances," and "under the circumstances, it would be in the public interest to appoint [a special prosecutor]." 28 C.F.R. § 600.1. Given that Tresch had no legal

right to have a special prosecutor appointed in his case, he cannot now claim that his counsel's failure to ask for one was unreasonable.

Nor can he claim that his counsel's refusal to make such a frivolous request constituted prejudice. In fact, Tresch does not even attempt to argue in his § 2255 motion that but for his counsel's failure to request a special prosecutor, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. If anything, making such a frivolous request would have jeopardized the ongoing plea negotiations. Tresch's ineffective-assistance claim for failure to request a special prosecutor is denied.

### 5. Failure to Advise on the Consequences of Pleading Guilty

Moving on to the next ineffectiveness claim, Tresch asserts that Steinback did not adequately advise him on the restitution fallout from entering a guilty plea. Am. § 2255 Mot. at 9-12. Specifically, Tresch maintains that his lawyer should have told him that the $45,000 bond money posted to secure his pretrial release was fair game for the government to seize under the restitution order. *Id.* at 11-12. That money, he contends, "would have prevented the foreclosure of [his] home and loss of residence for his wife and minor children." *Id.*

Tresch's claim fails right out of the gate. Essentially, Tresch is asking the Court to announce and apply a new rule of constitutional law—that is, counsel's failure to tell a client that the government may seize bond money under a restitution order amounts to ineffective assistance—which this Court cannot do on habeas review. *See Teague v. Lane*, 489 U.S. 288, 306-08 (1989). *Teague* held that,

with two exceptions not applicable to Tresch's situation, "habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure." *Id.* at 316 (plurality opinion); *Fryer v. United States*, 243 F.3d 1004, 1009-10 (applying *Teague* to a § 2255 motion). It is true that, in *Padilla v. Kentucky*, 559 U.S. 356, 364-65 (2010), the Supreme Court held that a failure to advise a defendant about a "collateral" consequence could potentially amount to ineffective assistance. But *Padilla* was limited to the deportation consequences of a conviction, *see United States v. Reeves*, 695 F.3d 637, 640 (7th Cir. 2012) ("*Padilla* is rife with indications that the Supreme Court meant to limit its scope to the context of deportation only."), so it would take a further step—a new rule—to hold that the failure to give advice on the forfeiture of bond money amounts to ineffective assistance.

Not that Tresch would have prevailed on this ineffective-assistance claim anyway. The Plea Agreement explicitly warned Tresch that he would be paying $1,112,000 in restitution. Plea Agreement at 18. The Plea Agreement does not identify a single asset that the restitution order could not touch. *Id.* And though Tresch claims that Steinback did not warn him that the government would seize the $45,000 bond money, he does acknowledge that "[a]s a result of [his] guilty plea Steinback explained that [his] family home was going to be forfeited to the United States … ." Tresch's Reply Br. at 2-3. Arguing that the $45,000 bond "would have prevented the foreclosure of [his] home," Am. § 2255 Mot. at 11-12, makes no sense given that Tresch admits he knew "[his] family home was going to be forfeited to the United States," Tresch's Reply Br. at 2-3. Tresch has not shown that his attorney's

failure to tell him that the bond money was fair game amounted to deficient performance.

He also cannot show that he suffered prejudice. As with all of Tresch's other ineffective-assistance complaints, here Tresch does not actually allege—let alone offer evidence—that but for his counsel's alleged error, "[he] would not have [pled] guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59. Absent any suggestion that Tresch would have changed course and not pled guilty had he known that the government would seize the $45,000 bond money, this ineffective-assistance claim must be rejected.

### 6. Failure to Object to the Government's Asset Forfeiture Calculation

Tresch also maintains that Steinback's failure to object to the government's forfeiture calculation constituted ineffective assistance. Am. § 2255 Mot. at 9 ("Counsel failed to act to mitigate the [G]overnment's efforts at forfeiture and allowed by … silence a final order of forfeiture in an amount which bears no relationship to any proceed possibly realized by [him] … ."); *id.* at 11, 14-16. By signing the Plea Agreement, Tresch acknowledged that "[he] was liable to the United States for approximately $4,819,253.69, which funds are subject to forfeiture because those funds constitute proceeds of [the mail fraud violation]." Plea Agreement at 19-20. According to Tresch, "[t]here is no reasonable way that counsel should have believed the [G]overnment had the right to forfeiture of money which in all likelihood exceeds his client's lifetime earnings, and is equal to more than four times the stated restitution losses in this case … ." Am. § 2255 Mot. at 16. He

further contends that "[to] establish that legitimate funds are subject to forfeiture [the government must prove] that the innocent funds had in some way been used to hide the tainted funds." *Id.* at 24-25.

The fact that Tresch has no legal basis to challenge the forfeiture order precludes him from arguing that Mr. Steinback's performance was deficient and ultimately forecloses his ineffective-assistance claim. Two statutes operate together to authorize criminal forfeiture under the mail fraud statutes. *See* 28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C); *see also United States v. Venturella*, 585 F.3d 1013, 1016 (7th Cir. 2009). Under 18 U.S.C. § 981(a)(1)(C), the government can forfeit "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to [mail fraud]." (Mail fraud is "an[] offense constituting 'specified unlawful activity' as defined in [18 U.S.C. 1956(c)(7)] … ." 18 U.S.C. § 981(a)(1)(C).) In cases like this one—that is "cases involving lawful goods or lawful services that are sold or provided in an illegal manner"—"'proceeds' means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services." 18 U.S.C. § 981(a)(2)(B). So, although Tresch refers to restitution amounts and his lifetime earnings, those amounts do not bear on what constitutes "proceeds." Here, all the money paid out to NS Mater qualifies as proceeds (minus direct costs, but there was no evidence as to what those were). And the law does not care whether Tresch personally only received a part of that money: "As a general rule, co-venturers in a criminal scheme—whether labeled as co-schemers, co-conspirators, or aiders and abettors—

are jointly and severally liable for all proceeds generated under a fraud scheme." *United States v. Black*, 526 F. Supp. 2d 870, 883 (N.D. Ill. 2007). Although Tresch did not personally receive the $4,819,253.69 that Mayer Brown ultimately paid out to NS Mater, the government can go after him for that entire amount.[11] In short, Steinback cannot be blamed for failing to raise a dud argument.[12] *See Williams*, 85 F. Supp. 2d at 840 ("It is not deficient performance to fail to raise an argument with no real chance of success … ."). And Tresch certainly cannot now claim that his counsel's refusal to make that argument at sentencing prejudiced him: regardless of the forfeiture order the Court ultimately entered, Tresch would have received the exact same sentence. *See United States v. Turner*, 2012 WL 34261, at *1 (N.D. Ill. Jan. 6, 2012) ("As for the prejudice component, in the context of sentencing, prejudice exists when, but for counsel's action or inaction, the movant would have received a shorter sentence."); *see also Glover v. United States*, 531 U.S. 198, 202-04 (2001). Tresch's motion to vacate his sentence based on his attorney's failure to object to the government's forfeiture calculations is denied.

---

[11]To the extent that Tresch challenges the forfeiture order itself, *see* Am. § 2255 Mot. at 22-25; Tresch's Reply Br. at 10-11, that claim fails for the same reasons. Tresch has not offered any calculations of his own to challenge the $4,819,253.69 figure. In any event, Tresch waived his right to contest the forfeiture order by pleading guilty, *see Young*, 124 F.3d at 798; *Brown*, 870 F.2d at 1358, and also by relinquishing his right to collaterally attack his sentence, *see* Plea Agreement at 25-26. Any challenge to the forfeiture order must be rejected.

[12]Tresch does not meaningfully challenge the $4,819,253.69 forfeiture figure, so whether or not that figure is accurate is off the table. (In his Reply Brief, Tresch alleges that the forfeiture amount included monies "which [Tresch] earned working on projects not related to his position at Mayer-Brown, work he did for NS Mater related to other, non-Mayer-Brown projects," and that "the majority of the money billed by NS Mater reflected legitimate work performed by that company … ." Tresch's Reply Br. at 11. But Tresch offers no evidence to support these allegations.) In any event, Tresch agreed to the forfeiture amount in both the written plea agreement, *see* Plea Agreement at 19-20, and at the change-of-plea colloquy, *see* Rule 11 Colloquy Tr. at 12:2-5.

### 7. Failure to Present an Adequate Defense at Sentencing

Tresch's final ineffective assistance claim is that his lawyer did not effectively represent him at sentencing: the "Sentencing Memorandum notwithstanding, counsel failed to make necessary objections to the PSR, and to the proposed sentencing guideline range … ."[13] Am. § 2255 Mot. at 14. Tresch further contends that his counsel "remain[ed] silent and fail[ed] to present mitigating factors at sentencing for no apparent reason." *Id.*

None of these arguments has any merit. An unspecific assertion that his counsel "failed to make necessary objections" is not enough to show ineffective assistance. In reality, at the sentencing hearing, Steinback argued at length to persuade the Court to reduce Tresch's sentence based on the acceptance-of-responsibility reduction and other mitigating factors. *See* Sentencing Hr'g Tr. at 10:6-21:20, 36:10-52:16. And he succeeded. After the Court applied that reduction, Tresch faced a guideline sentence range of 57 to 71 months, and the Court ultimately sentenced him to 27 months' imprisonment. *Id.* at 22:21-23:2. Under these circumstances, Tresch cannot overcome the presumption that his counsel's decision to raise only the most compelling sentence-reduction arguments "'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quotation marks and citation omitted).

The vagueness of Tresch's argument that Steinback "fail[ed] to make necessary objections to the PSR, and to the proposed sentencing guideline range,"

---

[13]Tresch also challenges Mr. Steinback's failure to contest the forfeiture amount at sentencing. Am. § 2255 Mot. at 14. The Court has already addressed and rejected that argument. *See supra* Section III.A.6 at 24-26.

Am. § 2255 Mot. at 14, also precludes him from establishing prejudice. In the context of sentencing proceedings, prejudice exists where but for counsel's errors, the petitioner would have received a shorter sentence. *Glover*, 531 U.S. at 202-04; *Turner*, 2012 WL 34261, at *1. Tresch simply cannot argue with a straight face—in light of his inability to pinpoint specific arguments that his attorney failed to make—that but for his attorney's errors, his sentence would have been shorter. As all of Tresch's other ineffective assistance claims have failed, this one does too.[14]

## B. Government Misconduct

Tresch contends that prosecutorial misconduct also warrants vacating his sentence. First, he asserts that the government failed to properly investigate his case before filing a criminal complaint against him. Am. § 2255 Mot. at 25-29. He

---

[14]Tresch attached twelve declarations to his Reply Brief to substantiate his ineffective assistance claims. *See* R. 24 at Appendix A. Tresch contends that these declarations—signed by family members and friends—"attest[] to [his] frustrations and problems with attorney Steinback from shortly after his retention until the completion of [his] case." Tresch's Reply Br. at 3. The declarations, the majority of which are virtually identical, generally relay what Tresch told his family and friends about Mr. Steinback's representation: for example, one declaration states, "Over the course of the approximate two years of David's case, David, as well as Dawn, his wife, made several comments and complaints regarding his lawyer's (Jeff Steinback) lack of performance, lack of attention and repeated absenteeism in relation to the case." *See* R. 24 at Appendix A, Declaration of Salvatore Campagna.

These declarations do little to help Tresch's case. This is because the declarations only parrot what Tresch told his family and friends about his lawyer; in other words, they do not reflect first-hand accounts of Steinback's allegedly deficient performance. *Cf. Paters v. United States*, 159 F.3d 1043, 1047 & n.5 (7th Cir. 1998) (holding that affidavits signed by the petitioner's parents did not constitute objective evidence supporting the petitioner's ineffective assistance claim because the affidavits "d[id] not reflect personal knowledge on the part of the parents, but merely relate[d] naked allegations of [the petitioner] himself. Such tenuous assertions fall short of being objective evidence."). To be sure, the declarations can be used to support Tresch's own version of the events. But as the Court explains throughout this Opinion, either the under-oath record does not support his version or, as a matter of law, even assuming his version is accurate, relief is still not justified.

27

also maintains that the government coerced him into pleading guilty.[15] *Id.* at 25-26, 29-31; Tresch's Reply Br. at 3-7. The Court addresses each argument in turn.

### 1. Failure to Investigate

In his § 2255 motion, Tresch asserts that "[o]n information and belief, the United States Attorney's Office brought the criminal complaint against [him] solely upon the word of representatives of Mayer Brown without an involved and real investigation … until AFTER his arrest … ." Am. § 2255 Mot. at 27; *id.* at 26 (referring to the government's "obligation to investigate the facts of a case, and not limit its inquiry to those facts shared by an alleged victim, no matter the reputation or prestige of said victim").

The complete absence of any factual or legal basis to support this argument is striking. Tresch cannot point to any evidence showing that the government inadequately investigated his case before filing the criminal complaint. That Tresch "[o]n information and belief" maintains that the government engaged in misconduct only prompts the question: what is the "information" to which Tresch refers? Indeed, the criminal complaint that the government filed was extremely detailed in describing the specific evidence that gave the government probable cause to believe that Tresch had engaged in a massive kickback scheme to defraud his former

---

[15]Tresch also argues that the government should have hired special counsel to prosecute him. Am. § 2255 Mot. at 25-26 ("Mayer Brown is so interconnected to the United States Attorney's office in the Northern District of Illinois that either a special prosecutor should have been appointed, or the decision to charge, and prosecution of [sic] the case, should have been handled by the Justice Department in Washington."). The Court rejects this argument for the same reasons it rejected Tresch's ineffective assistance argument based on his lawyer's failure to request a special prosecutor. *See supra* Section III.A.4 at 20-21.

employer. *See* Compl. That evidence included Mayer Brown financial records, Mayer Brown email communications about NS Mater, NS Mater corporate account records, Tresch's bank records, Tresch's interview with Mayer Brown before he was fired, and interviews with Mayer Brown employees. *Id.* The record shows that the government did not arrest Tresch based on mere representations from Mayer Brown employees.

Even if Tresch had a viable government misconduct claim here, he waived it twice over. Because this claim is independent of any ineffective assistance or government coercion allegation, Tresch waived his right to raise it by pleading guilty, *see Young*, 124 F.3d at 798; *Brown*, 870 F.2d at 1358, and also by relinquishing his right to collaterally attack his sentence, *see* Plea Agreement at 25-26. Tresch's claim that the government failed to adequately investigate his case is frivolous,[16] waived, and must be dismissed.

### 2. Involuntary Guilty Plea

Tresch's final claim in support of his motion to vacate is that the government's "threat[s] to prosecute innocent and uninvolved members of his family" rendered his guilty plea involuntary. Am. § 2255 Mot. at 29-31; Tresch's Reply Br. at 3-7. Tresch goes so far as to contend that "[e]very statement made in

---

[16]Tresch's attempt to challenge his conviction based on the government's decision to "keep Mayer Brown's name out of any public document," Am. § 2255 Mot. at 27-28, is likewise frivolous. An indictment must "include 'such a statement of the facts and circumstances as will inform the accused of the specific offense … with which he is charged.'" *United States v. Mizyed*, 927 F.2d 979, 981 (7th Cir. 1991) (citation omitted). And "[the Seventh Circuit] previously has affirmed the sufficiency of indictments which do not identify specific mail fraud victims by name." *Id.* Because the law does not require the government to identify victims of alleged mail fraud in the indictment, Tresch has no basis to challenge his conviction on this ground.

court, every statement before the grand jury, was made with the sure knowledge that agents present, representing the United States had the power to, and had indicated their UNRECANTED INTENTION TO prosecute his completely innocent and uninvolved children if he didn't play ball … ." Tresch's Reply Br. at 4. Tresch relies on his own declaration to substantiate those allegations:

> 19. During one early proffer session, federal agents, with AUSA [Terra] Reynolds present, made it clear to me that if I did not cooperate and plea to their satisfaction, my uninvolved adult children would be indicted for phantom and spurious crimes[.]

Tresch Decl. ¶¶ 20-21. Tresch also submitted—with his reply brief—seven virtually identical declarations signed by his wife, children, and two others to further support his involuntariness claim. *See* R. 24 at Appendix B. These third-party declarations recounted what Tresch had told his family and friends about the alleged threats:

> Shortly after [Tresch's] arrest, he started complaining that he felt forced to go along with and do whatever the government and his lawyer told him to do. He said a virtual gun had been put to his head and said that in his first meeting with the government that [his wife and kids] had been threatened with arrest. This clearly shook him up and [the] family.

*Id.* at Elliot Tresch Decl.; *id.* at Dawn Tresch Decl. (same); *id.* at Maura Tresch Decl. (same); *id.* at Brendan Tresch Decl. (same); *id.* at Scott Tresch Decl. (same); *id.* at Don Tieri Decl. (same); *id.* at Michelle Tieri Decl. (same). Tresch contends that the declarations "attest[] to [his] expressed fears and statements about the threats levied against his children." Tresch's Reply Br. at 5. For its part, the government contends that Tresch's claim is "a false, uncorroborated accusation." Government's Resp. Br. at 38; *id.* at 41 (referring to Tresch's involuntariness claim as a "baseless accusation").

Courts apply a totality of circumstances test when determining whether a defendant's guilty plea was involuntary. *United States v. Lundy*, 484 F.3d 480, 484 (7th Cir. 2007). A defendant's representation in the plea agreement and during the change-of-plea colloquy that he is guilty and that his plea is voluntary "carries a strong presumption of veracity." *United States v. Darling*, 766 F.2d 1095, 1101 (7th Cir. 1985); *see also Pike*, 211 F.3d at 389. So, absent a "compelling explanation for the contradiction," *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005), "'[a] district court is generally justified in … holding the defendant to [his] admissions at the Rule 11 hearing,'" *Pike*, 211 F.3d at 389-90 (quoting *Groll*, 992 F.2d at 758 ); *see also supra* Section III.A. at 7-9.

Here, Tresch's admission of guilt in the plea agreement and at the plea hearing, under oath, undermines his involuntariness claim. *See* Plea Agreement at 2 ("By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the indictment, which charges defendant with having devised and participated in a scheme to defraud and deprive the Victim Firm of the intangible right to the honest services of its employee defendant TRESCH through kickbacks … ."); Rule 11 Colloquy Tr. at 9:10-10:6, 24:17-25:2. Tresch further confirmed at the under-oath plea hearing that no one threatened him to accept the plea agreement. Rule 11 Colloquy Tr. at 10:11-22. As the government points out, "[i]f Tresch had been actually threatened … he could not have been given a better opportunity to expose that threat than to tell a federal judge directly, in open court, about that threat … ." Government's Resp. Br. at 39. After all, "[t]he purpose of a Rule 11

colloquy is to expose coercion or mistake, and the district judge must be able to rely on the defendant's sworn testimony at that hearing." *Hutchings*, 618 F.3d at 699 (quotation marks and citations omitted).

And the declarations that Tresch relies on to bolster his involuntariness claim are not enough to "allow[] [him] to renege on his representation under oath … that there were no promises made to him to induce his guilty plea." *Hutchings*, 618 F.3d at 699; *see also Stewart*, 198 F.3d at 987 ("A defendant's protestation that statements freely made under oath when entering the plea were a pack of lies is not a 'fair and just reason' to start anew."). For one thing, the nearly identical declarations signed by Tresch's family and friends only recount what Tresch supposedly told them about the government's alleged threats. *See* R. 24 at Appendix B. In other words, the declarations are one step removed from what is really at issue here: instead of offering direct evidence that the government in fact threatened Tresch, the declarations merely parrot what Tresch told his family and friends, namely "that [his wife and kids] had been threatened with arrest." *Id.* Because the declarations merely parrot Tresch's allegations, they fall far short of rebutting the strong presumption of veracity accorded to under-oath guilty pleas.[17] *Cf. Paters v. United States*, 159 F.3d 1043, 1047 & n.5 (7th Cir. 1998) (holding that affidavits signed by the petitioner's parents did not constitute objective evidence supporting the petitioner's ineffective assistance claim because the affidavits "d[id]

---

[17]Tresch did not even submit these declarations until filing his reply brief, which alone is fatal to his claim. *See Balzano*, 916 F.2d at 1297 n.23 ("Although Balzano purported to provide examples of such evidence in his reply brief, it is well settled that a matter may not be raised for the first time in a reply brief.").

not reflect knowledge on the part of the parents, but merely relate[d] naked allegations of [the petitioner] himself. Such tenuous assertions fall short of being objective evidence."); *Delatorre v. United States*, 2015 WL 1176820, at *7 n.3 (N.D. Ill. Mar. 11, 2015) (rejecting affidavits from the petitioner's family members attesting to statements made by the petitioner about the plea deal the prosecutor offered him).

The declarations that Tresch submitted are also too vague to satisfy the "heavy burden of persuasion" necessary to contradict his guilty plea. *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987). Vague assertions that the government threatened to indict "[Tresch's] uninvolved adult children … for *phantom and spurious crimes*" is not enough. Tresch Decl. ¶¶ 19-21 (emphasis added); R. 24 at Appendix B at Elliot Tresch Decl. ("He said a virtual gun had been put to his head and said that in his first meeting with the government that my mom and my brothers and sister had been threatened with arrest."). *See also Key v. United States,* 806 F.2d 133, 137 (7th Cir. 1986) ("[W]here the record ... reflects the defendant voluntarily entered into the plea and ... the section 2255 motion does not clearly present new *specific* allegations, then no section 2255 evidentiary hearing is required" (emphasis added)); *United States v. Fields*, 2013 WL 1410231, at *6 (N.D. Ind. Apr. 8, 2013) (rejecting the defendant's involuntary plea argument, reasoning that "[t]he [d]efendant's vague assertions in his Affidavit d[id] not satisfy the heavy burden of persuasion" in light of the defendant's statements during the Rule 11 colloquy). Without more, Tresch has not provided a "compelling explanation" for his

under-oath guilty plea and under-oath testimony that no one coerced him into pleading guilty. *Peterson*, 414 F.3d at 827; *see also United States v. Ortiz*, 2012 WL 6720770, at *4 (N.D Ill. Dec. 27, 2012) ("In situations such as this, where a defendant's statements under oath contradict the assertions in his § 2255 petition, the petition can be denied outright unless the defendant has a compelling reason for the contradiction."). In short, Tresch has not presented a compelling reason for the Court to disregard his under-oath admissions made at the change-of-plea colloquy.

## IV. Conclusion

For the reasons discussed above, Tresch's Amended Motion to Vacate, Set Aside or Correct Sentence, R. 13, is denied. If Tresch seeks to appeal the Court's decision, he must first obtain a certificate of appealability. Under 28 U.S.C. § 2253, "an appeal may not be taken to the court of appeals from the final order in a proceeding under section 2255" unless the district judge first issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may issue only when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing, a petitioner must show that "reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks and citation omitted). For the reasons discussed above, Tresch has not made a substantial showing of the denial of a constitutional right; reasonable jurists would not debate whether the challenges

in his § 2255 motion should have been resolved differently or determine that Tresch deserves encouragement to proceed further with his habeas claims. *See Rutledge v. United States*, 230 F.3d 1041, 1047 (7th Cir. 2000). It is clear, whether viewed through the lens of ineffective-assistance or directly on the merits, that Tresch's claims have no merit. So this Court declines to issue a certificate of appealability.

For now, this Opinion is being issued under seal because the government's response was filed under seal, presumably because grand jury materials were cited. But the Federal Rules of Criminal Procedure authorize disclosure of grand jury materials "in connection with a judicial proceeding," Fed. R. Crim. P. 6(e)(3)(E)(i), so there should be nothing in this Opinion that requires sealing. Plus, once the Court relies on a fact for the basis of a judicial decision, then there is a strong presumption that the fact must be made public. So if the government wishes to maintain parts of this Opinion under seal, then it shall file a motion by September 28, 2016, explaining what parts should be sealed and why. If the government decides not to file a motion, then the government shall file a Status Report to that effect by the same deadline.

ENTERED:


_____s/Edmond E. Chang_____
Honorable Edmond E. Chang
United States District Judge

DATE: September 22, 2016